IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **ASHLEY KNOBBE** <br> **809 Elm Tree Drive** <br> **Morrow, OH 45152** | : <br> : <br> : <br> : <br> : <br> : | CASE NO.: <br><br> JUDGE: |
| **Plaintiff,** | : <br> : | |
| v. | : <br> : | |
| **PWJC, LLC** <br> **d/b/a SERVPRO OF EAST CENTRAL** <br> **1850 Summit Road** <br> **Cincinnati, OH 45237** | : <br> : <br> : <br> : <br> : <br> : <br> : | Jury Demand Endorsed Hereon |
| **Defendant.** | : | |

## PLAINTIFF'S COMPLAINT

NOW COMES Plaintiff Ashley Knobbe ("Plaintiff") and proffers this Complaint for damages against PWJC, LLC d/b/a Servpro of East Central. ("Defendant").

## JURISDICTION AND VENUE

1. This action is brought pursuant to the Civil Rights Act of 1964 (hereinafter, "Title VII"), and the O.R.C. Chapter 4112 *et seq.*

2. Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331 and 29 U.S.C. § 1332(e), which provide for original jurisdiction of Plaintiff's claims arising under the law of the United States and over actions to secure equitable and other relief.

3. This Court has jurisdiction over Plaintiff's claims under Title VII, as Plaintiff has exhausted all administrative remedies and received a Right to Sue letter on or about August 8, 2022. (See attached hereto as Exhibit A).

4. This Court has jurisdiction over Plaintiff's claims under the statutory law of Ohio pursuant to supplemental jurisdiction as codified at 28 U.S.C. § 1367.

5. Venue is proper in this forum pursuant to 28 U.S.C. § 1391 because Plaintiff entered into an employment relationship with Defendant in the Southern District of Ohio and performed her job duties predominately there and Defendant is doing and has done substantial business in the Southern District of Ohio.

## THE PARTIES

6. Plaintiff Ashley Knobbe is an individual, a United States citizen, and a resident of the state of Ohio.

7. At all times relevant herein, Plaintiff was an "employee" of Defendant as that term is defined under Title VII and O.R.C. Chapter 4112 *et seq.*

8. Defendant PWJC, LLC, Servpro of East Central is a limited liability company that conducts business in the Southern District of Ohio.

9. At all times relevant herein, Defendant was a covered "employer" as that term is defined under Title VII and O.R.C. Chapter 4112 *et seq.*

## FACTUAL BACKGROUND

10. Plaintiff began working for Defendant in or around April 2017.

11. Plaintiff worked as a Sales Representative at the time she was terminated from Defendant.

12. Plaintiff earned approximately $60,000 per year beginning in the fall of 2017.

13. In or around the summer of 2018, Plaintiff began experiencing harassing behavior from her coworkers and management as they began demonstrating extreme discriminatory animus towards women, certain religions, and certain nationalities.

14. Toward the summer of 2018, Defendant's Operations Manager, Mathieu Arrington, moved to Golf Manor to live closer to Defendant's office.

15. Soon thereafter, Mr. Arrington began making negative comments about the Jewish faith on a consistent basis.

16. For example, Mr. Arrington consistently said that Golf Manor was full of "dirty Jews," and he would complain about how the Orthodox Jews there looked and how they would walk around on their Sabbath day, Saturday.

17. Mr. Arrington, in the presence of Brandon Johnson and Patrick Wright, would make jokes about hitting the Orthodox Jews with his car because they are dressed in black and being able to get away with it.

18. Mr. Arrington also discussed making custom barrel lids as Christmas gifts for both of the owners of Servpro.

19. Mr. Arrington discussed the one he made for Jim Cook simply read "The Cooks" and stated the one he made Patrick Wright had a swastika on it.

20. During that summer of 2018, one of Defendant's owners, Patrick Wright, showed the swastika tattoo on the back of his leg in the workplace.

21. Mr. Wright also discussed how he had framed picture of Adolf Hitler in his basement.

22. Mr. Wright began performing the "Servpro Salute" with Defendant's employees, which is identical to the salute that the Nazis used during World War II.

23. Mr. Wright had a neon sign that he kept lit above his desk with the bare chest of a woman on it.

24. Mr. Wright also kept a stack of pornographic magazines on the table in the back corner of the office, even after Plaintiff brought it to his attention that they were there and would be a HR violation.

25. Defendant hired an employee named Jim during the summer of 2018.

26. Upon learning about Jim's religion, Mr. Arrington expressly complained about Jim being of the Jewish faith.

27. Upon hearing some of the comments firsthand, Plaintiff spoke to Mr. Arrington, Mr. Wright, the other owner, Jim Cook, and the general Manager, Brandon Johnson, about how she was upset about the comments made about Jim for being of the Jewish faith

28. Plaintiff informed the aforementioned men that she has Polish family members who were killed in concentration camps in Warsaw, Poland, during WWII.

29. Mr. Arrington responded to Plaintiff's statement by saying, "your family was drunk and fell out of the guard towers," to which the other men laughed.

30. Soon after Plaintiff's comments about her family, Defendant reduced her base salary by almost $20,000 per year.

31. Defendant also had created a new position of "Sales Manager" and did not consider Plaintiff for the position, despite her being the senior sales representative at the time.

32. Defendant hired Brandon Huff for the position.

33. Sales Manager, Brandon Huff, would brag to Plaintiff about how he married into a family of Nazis and occasionally referred to his wife as "Hitler's Daughter".

34. Brandon Huff also publicly stated in a sales meeting that Plaintiff has more expertise in Sales and Marketing.

35. On February 15, 2019, Mr. Johnson instructed Plaintiff and other sales representatives not to do business with Jewish people and people of Indian descent.

36. During a sales meeting, Mr. Johnson said to Plaintiff and other sales representatives, "[I]f it is a Jewish firm from New York just stay the fuck away from them. Because they'll call us and we'll do the work and never get paid. [A]nd it's consistent. All of them are that way. Just like the Indian Customers."

37. On March 1, 2019, Mr. Moberly sarcastically said to Plaintiff regarding her Polish ancestors who were killed in Nazi concentration camps, "[y]ou weren't allowed to know them cause they were eliminated like the assholes they were."

38. On March 1, 2019, Mr. Moberly performed the "Servpro Salute" with Mr. Wright.

39. Plaintiff was also consistently subjected to a sexually hostile work environment during her last 10 months at Defendant.

40. For example, Mr. Johnson talked in front of Plaintiff about having sex with prostitutes in the trailers, stating, "[t]hey wouldn't let a little thing like a period stop them cause there were some guys getting their red wings."

41. Mr. Arrington followed up Mr. Johnson's comments about sex with prostitutes by saying he is "not finished with a hooker unless she is bleeding from somewhere."

42. In response to Plaintiff asking Mr. Arrington and a few other Defendant employees if they would help her drive items for a charity drive for women who have experienced violent abuse,

5

Mr. Arrington said that he would help because he likes his "women battered," and that he "like[s] them that way because they have a low self-esteem."

43. Owner Jim Cook also made the working environment for Plaintiff hostile with repeated sexually charged comments.

44. Jim Cook would make comments to Plaintiff about her breasts and her husband and her private life.

45. At a companywide meeting, all employees were required to attend and Jim brought donuts for the employees.

46. Plaintiff asked Jim to pass her a donut, to which Jim held at his groin level and asked her to play "Ring Toss".

47. Patrick Wright made comments to other co-workers, in Plaintiff's presence, that her second baby's actual father was Jim Cook because the baby and Mr. Cook both had red hair.

48. Brandon Johnson had an extramarital affair with one of Plaintiff's referral clients.

49. Upon learning of this affair, and subsequent breakup, the Plaintiff lost out on an undefined amount of restoration job referrals.

50. Brandon Johnson had in his possession, several pieces of jewelry that belonged to the client and made Plaintiff return her jewelry to her instead of returning it or mailing it himself.

51. On March 29, 2019, Defendant terminated Plaintiff's employment for no legitimate basis.

52. On March 29, 2019, Mr. Huff and Mr. Johnson called Plaintiff into a meeting to tell her that her employment was being terminated allegedly due to her not inputting her sales calls into the "Workcenter Marketing" program.

53. Plaintiff responded by explaining that she could not input her sales calls into the program because Mr. Wright took her iPad about a month ago.

54. Upon hearing Plaintiff's explanation, Mr. Johnson then changed explanations, saying the reason she was terminated was due to her supposedly complaining about her salary being cut.

## FIRST CAUSE OF ACTION
**Discrimination Based on National Origin in Violation of the Civil Rights Act of 1964 ("Title VII")**

55. Plaintiff realleges and incorporates as if fully set forth herein, all proceeding paragraphs.

56. At all times relevant herein, Plaintiff was qualified to perform the essential functions of her job.

57. Plaintiff is a member of protected classes because she is of Polish descent.

58. As of the summer of 2018, Defendant was aware of Plaintiff's Polish descent.

59. Plaintiff suffered adverse employment actions when her base pay was reduced by Defendant and when her employment was terminated by Defendant.

60. Defendant's reason for terminating Plaintiff is a pretext for discrimination given, among other reasons, she was treated less favorably than similarly-situated employees of non-Polish descent, Defendant's reason for her termination was inconsistent and shifting, and Defendant's reason could not have motivated its decision to terminate her.

61. Defendant engaged in unlawful employment practices and discrimination in violation of Title VII by treating Plaintiff differently than similarly situated employees in the terms and conditions of her employment by, *inter alia,* reducing Plaintiff's pay and later terminating Plaintiff because of her Polish descent.

62. Defendant thereby discriminated against Plaintiff in the terms, conditions, and benefits of her employment in violation of Title VII.

63. As a direct and proximate result of the actions of Defendant set forth above, Plaintiff has suffered, is now suffering, and will continue to suffer.

64. Furthermore, as a direct and proximate result of Defendant's actions, Plaintiff has been, is being, and will be in the future, deprived of her income in the form of wages and of prospective benefits solely because of Defendant's conduct.

65. As a result of Defendant's unlawful discriminatory conduct, Plaintiff has suffered damages, entitling her to unpaid wages, attorneys' fees, and all other remedies available under Title VII.

**SECOND CAUSE OF ACTION**
**Discrimination Based on Sex in Violation of the Civil Rights Act of 1964 ("Title VII")**

66. Plaintiff realleges and incorporates as if fully set forth herein, all proceeding paragraphs.

67. At all times relevant herein, Plaintiff was qualified to perform the essential functions of her job.

68. Plaintiff is a member of protected classes because she is a woman.

69. As of the summer of 2018, Defendant was aware of Plaintiff's sex.

70. Plaintiff suffered adverse employment actions when her employment was terminated by Defendant.

71. Defendant's reason for terminating Plaintiff is a pretext for discrimination given, among other reasons, she was treated less favorably than similarly-situated male employees, Defendant's reason for her termination was inconsistent and shifting, and Defendant's reason could not have motivated its decision to terminate her.

72. Defendant engaged in unlawful employment practices and discrimination in violation of Title VII by treating Plaintiff differently than similarly situated employees in the terms and conditions of her employment by, *inter alia,* terminating Plaintiff because of her sex.

73. Defendant thereby discriminated against Plaintiff in the terms, conditions, and benefits of her employment in violation of Title VII.

74. As a direct and proximate result of the actions of Defendant set forth above, Plaintiff has suffered, is now suffering, and will continue to suffer.

75. Furthermore, as a direct and proximate result of Defendant's actions, Plaintiff has been, is being, and will be in the future, deprived of her income in the form of wages and of prospective benefits solely because of Defendant's conduct.

76. As a result of Defendant's unlawful discriminatory conduct, Plaintiff has suffered damages, entitling her to unpaid wages, attorneys' fees, and all other remedies available under Title VII.

## THIRD CAUSE OF ACTION
**Discrimination Based National Origin in Violation of Ohio Revised Code § 4112, *et seq.***

77. Plaintiff realleges and incorporates as if fully set forth herein, all proceeding paragraphs.

78. At all times relevant herein, Plaintiff was qualified to perform the essential functions of her job.

79. Plaintiff is a member of protected classes because she is of Polish descent.

80. As of the summer of 2018, Defendant was aware of Plaintiff's Polish descent.

81. Plaintiff suffered an adverse employment action when her base pay was reduced by Defendant and when her employment was terminated by Defendant.

82. Defendant's reason for terminating Plaintiff is a pretext for discrimination given, among other reasons, she was treated less favorably than similarly-situated employees of non-Polish descent, Defendant's reason for her termination was inconsistent and shifting, and Defendant's reason could not have motivated its decision to terminate her.

83. Defendant engaged in unlawful employment practices and discrimination in violation of O.R.C Chapter 4112 *et seq.,* by treating Plaintiff differently than similarly situated employees in the

terms and conditions of her employment by, *inter alia*, reducing Plaintiff's pay and later terminating Plaintiff because of her sex and her Polish descent.

84. Defendant thereby discriminated against Plaintiff in the terms, conditions, and benefits of her employment in violation of O.R.C Chapter 4112 *et seq*.

85. As a direct and proximate result of the actions of Defendant set forth above, Plaintiff has suffered, is now suffering, and will continue to suffer.

86. Furthermore, as a direct and proximate result of Defendant's actions, Plaintiff has been, is being, and will be in the future, deprived of her income in the form of wages and of prospective benefits solely because of Defendant's conduct.

87. As a result of Defendant's unlawful discriminatory conduct, Plaintiff has suffered damages, entitling her to unpaid wages, attorneys' fees, and all other remedies available under O.R.C Chapter 4112 *et seq*.

**FOURTH CAUSE OF ACTION**
**Discrimination Based Sex in Violation of Ohio Revised Code § 4112,** *et seq.*

88. Plaintiff realleges and incorporates as if fully set forth herein, all proceeding paragraphs.

89. At all times relevant herein, Plaintiff was qualified to perform the essential functions of her job.

90. Plaintiff is a member of protected classes because she is a woman.

91. As of the summer of 2018, Defendant was aware of Plaintiff's sex.

92. Plaintiff suffered adverse employment actions when her employment was terminated by Defendant.

93. Defendant's reason for terminating Plaintiff is a pretext for discrimination given, among other reasons, she was treated less favorably than similarly-situated male employees, Defendant's

reason for her termination was inconsistent and shifting, and Defendant's reason could not have motivated its decision to terminate her.

94. Defendant engaged in unlawful employment practices and discrimination in violation of Title VII by treating Plaintiff differently than similarly situated employees in the terms and conditions of her employment by, *inter alia,* terminating Plaintiff because of her sex.

95. Defendant thereby discriminated against Plaintiff in the terms, conditions, and benefits of her employment in violation of Title VII.

96. As a direct and proximate result of the actions of Defendant set forth above, Plaintiff has suffered, is now suffering, and will continue to suffer.

97. Furthermore, as a direct and proximate result of Defendant's actions, Plaintiff has been, is being, and will be in the future, deprived of her income in the form of wages and of prospective benefits solely because of Defendant's conduct.

98. As a result of Defendant's unlawful discriminatory conduct, Plaintiff has suffered damages, entitling her to unpaid wages, attorneys' fees, and all other remedies available under Title VII.

## FIFTH CAUSE OF ACTION
**Hostile Work Environment Based on National Origin in Violation of the Civil Rights Act of 1964 ("Title VII")**

99. The antisemitic conduct of Defendant leadership and employees, including but not limited to, the owner's swastika tattoo and use of the "Servpro Salute" at work, as well Plaintiff's coworkers making light of her Polish relatives' deaths at the hands of the Nazis, would be offensive to any reasonable employee and was personally offensive to Plaintiff due, among other reasons, to her Polish ancestry.

100. The antisemitic conduct of Defendant's leadership and employees was severe in its nature and pervasive in its frequency and its broad adoption among Plaintiff's coworkers.

101. At all times relevant to this action, the men who created this hostile work environment were either employed by or in ownership of Defendant and acting in the course of their employment therein.

### SIXTH CAUSE OF ACTION
**Hostile Work Environment Based on Sex in Violation of the Civil Rights Act of 1964 ("Title VII")**

102. The misogynistic conduct of Defendant's leadership and employees, including but not limited to, Mr. Arrington's comments about sleeping with prostitutes in the trailers at work and about liking his "women battered," would be offensive to any reasonable employee and were personally offensive to Plaintiff due to, among other things, her own experience with sexual violence.

103. The misogynistic conduct of Defendant's leadership and employees was severe in its nature and pervasive in its acceptance among employees.

104. At all times relevant to this action, the men who created this hostile work environment were either employed by or in ownership of Defendant and acting in the course of their employment therein.

### SEVENTH CAUSE OF ACTION
**Hostile Work Environment Based on National Origin in Violation of Ohio Revised Code § 4112, *et seq*.**

105. The antisemitic conduct of Defendant's leadership and employees, including but not limited to, the owner's swastika tattoo and use of the "Servpro Salute" at work, as well Plaintiff's coworkers making light of her Polish relatives' deaths at the hands of the Nazis,

would be offensive to any reasonable employee and was personally offensive to Plaintiff due, among other reasons, to her Polish ancestry.

106. The antisemitic conduct of Defendant's leadership and employees was severe in its nature and pervasive in its frequency and its broad adoption among Plaintiff's coworkers.

107. At all times relevant to this action, the men who created this hostile work environment were either employed by or in ownership of Defendant and acting in the course of their employment therein.

### EIGHTH CAUSE OF ACTION
**Hostile Work Environment Based on Sex in Violation of Ohio Revised Code § 4112, *et seq*.**

108. The misogynistic conduct of Defendant's leadership and employees, including but not limited to, Mr. Arrington's comments about sleeping with prostitutes in the trailers at work and about liking his "women battered," would be offensive to any reasonable employee and were personally offensive to Plaintiff due to, among other things, her own experience with sexual violence.

109. The misogynistic conduct of Defendant's leadership and employees was severe in its nature and pervasive in its acceptance among employees.

110. At all times relevant to this action, the men who created this hostile work environment were either employed by or in ownership of Defendant and acting in the course of their employment therein.

### NINTH CAUSE OF ACTION
**Unlawful Retaliation in Violation of Ohio Revised Code § 4112, *et seq*.**

111. Plaintiff engaged in protected activity when she spoke out after Jim was criticized and terminated for his Jewish faith, and when she spoke out against the overall antisemitic

statements made in her workplace. Plaintiff also engaged in protected conduct when she complained about the sexist comments and discrimination in the workplace.

112. Plaintiff suffered materially adverse employment actions when her pay was reduced and later when she was terminated by Defendant.

113. Defendant was aware of Plaintiff's protected activity.

114. Based on the close temporal connection, Plaintiff's pay would not have been reduced if she had not engaged in this protected activity.

115. Defendant had no legitimate, non-retaliatory reason to reduce Plaintiff's pay or to terminate her employment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks an award against Defendant in an amount equal to the liability, losses, damages, liquidated damages, punitive damages, attorneys' fees, costs, expenses, and any other amounts available under the law incurred by Plaintiff for Defendant's violations.

Respectfully submitted,

/s/ Bradley L. Gibson
Bradley L. Gibson (0085196)
**GIBSON LAW, LLC**
9200 Montgomery, Rd., Suite 11A
Cincinnati, OH 45242
(*brad@gibsonemploymentlaw.com*)
[T] (513) 834-8254
[F] (513) 834-8253

*Counsel for Plaintiff*

## **JURY DEMAND**

Plaintiff demands a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

/s/ Bradley L. Gibson
Bradley L. Gibson (0085196)
